INHABITANTS OF CANTON *vs.* FRANCIS O. J. SMITH *et al.*

Oxford, December, 1875.—March 5, 1876.

*Covenant. Town. Bond.*

A public act authorizing town aid to railroads need not be noticed in the article in the warrant to see if the town will vote such aid.

A town meeting is called for the purpose of each and every article in the warrant, though one article requires a majority vote, and another a two-thirds vote.

A town meeting, called to vote aid to a railroad under a statute which requires a two-thirds vote, may adjourn by a majority vote, and the adjourned meeting is the continuation of the original meeting.

A vote that a bond shall be given, in all respects to the acceptance of the selectmen, gives discretionary power not only as to the obligors, but also as to the form and substance.

The value of legal bonds is *prima facie* the amount due upon them.

ON EXCEPTIONS.

COVENANT BROKEN on a contract under seal agreeing to complete a railroad or return bonds given in aid of its completion.

Plea, performance with a brief statement alleging a partial performance and waiver as to residue, and a failure of consideration on the ground that the bonds not having been authorized were invalid; and that the contract was void, not having been authorized by the town's vote.

The facts, so far as to raise the legal points, are these : In February, 1868, the Portland & Oxford Central Railroad Company, of which one of the defendants was president, and the other director and principal manager, had a charter for a railroad from Mechanic Falls, through Hartford to Canton, which had not been constructed from H. to C. The president of the road appealed to the plaintiff town to vote aid in its construction, under a statute authorizing them so to do by a two-thirds vote. An article was accordingly inserted in the warrant for their annual town meeting called March 2, 1868, which adjourned without action thereon to March 7 and then voted (149 to 9) in substance, to empower the selectmen and treasurer to issue bonds equal to five per cent. of the property valuation of Canton, to be exchanged for a like amount of stock of the P. & O. C. R. R. corporation ; said vote to be upon condition that the directors should give an obligation binding the corporation and themselves individually to complete the road with the year 1868, the bonds to be issued monthly as the work progressed. Certain of the directors declined to give such obligation, and no bonds were issued under that vote. A special meeting was called December 19, 1868, and voted in substance, that, whereas, &c., (reciting the vote of March 7, and the failure of action thereon,) therefore voted to extend the time for completion to December 31, 1869, and to empower and instruct the selectmen and treasurer to issue bonds in aid therefor, to the full amount voted, and in accordance with the vote of March 7 ; provided, however, that there shall be executed and delivered within thirty days a bond for the completion of said extension, which shall be in all respects satisfactory to, and accepted by, the selectmen and treasurer of said Canton.

The defendants thereupon gave their personal obligation (in suit) and received in behalf of the corporation, bonds issued as the work progressed to the amount of $22,500. The road was partially constructed so that cars were run over it. It was, however, admitted at the trial, that the road was not completed within the year 1869, or ever, and that the bonds had never been returned.

The verdict was for the plaintiff, in accordance with the instruction of the presiding justice, for the face of the bonds and coupons issued thereon, due at the date of the writ, with interest on their amount to the time of the verdict, $30,404.30.

The defendants excepted.

*F. O. J. Smith & B. Bradbury,* for the defendants, contended that though the meeting of March 2, was legally called and notified for general business, it was not called as the statute requires, for the purpose of voting town aid to railroads; that "called for the purpose," means specially called; that an article requiring a two-thirds vote could not legally be acted on under a warrant containing articles requiring only a majority vote; that the warrant should recite or refer to the statute allowing towns to aid railroads by a two-thirds vote; that admitting the article to be legally before the meeting of March 2, no legal action could be had thereon at an adjourned meeting; that if any adjournment was legal as to the article, it must be by a two-thirds vote, no evidence that this adjournment was not by a majority vote; that the obligation in suit was not in accordance with either vote, neither vote authorizing the insertion of the clause requiring the return of the bonds or their equivalent; that if any verdict can be sustained not this, as there was a partial performance and the bonds, delivered as the work progressed, were not worth their face; that the stock received in exchange for the bonds should have been surrendered before the commencement of the action; and that the interest was compounded.

*J. H. Drummond,* for the plaintiffs.

DANFORTH, J. This is an action upon a written agreement under seal, in which the defendants undertake, in consideration of certain votes of the plaintiff town, to complete or cause to be

completed the Portland & Oxford Central Railroad, from Hartford Centre to Canton village, or, in case of failure, to refund to said town every bond issued by it in aid of said extension, or its equivalent in money, and all interest due and paid or unpaid.

At the request of the plaintiffs, the jury were instructed that "upon the whole evidence the plaintiffs are entitled to recover." Certain instructions were also given with regard to interest.

The jury returned a verdict in accordance with these instructions, and the defendants except to them.

The material facts in the case are not disputed. Certain bonds were issued to said road under the alleged votes of the town, and accepted by the directors or the defendants. The extension of the road has not been completed within the time specified, or at any time, nor have the bonds so issued and received or their equivalent been refunded.

It is, however, contended that the agreement upon which the action is founded is null and void, because it is not such a one as was contemplated by the vote of the town; that the provision in regard to refunding the bonds is not made a part of the agreement by that vote. This provision is certainly vital to the action, and if unauthorized the verdict cannot be sustained.

But this agreement was a voluntary act on the part of the defendants. They were not under arrest and required to give a bond not authorized by law to procure their release, nor was the obligation signed under any duress of person or property. Besides, the town subsequently authorized and required such a bond as "shall be in all respects satisfactory to, and accepted by, the selectmen and treasurer of said Canton." This vote of December 19, 1868, was a modification of the former one. It authorized not only a change of obligors, but also of the form as well as substance of the writing. A narrower construction than this would do violence to the language of the vote. The bond then is such as the defendants were willing to sign, was authorized by the vote, and has, by the commencement of this action if not otherwise, been ratified and accepted by the town.

The road has not been completed as required, and the alternative remains to be done, the refunding of the bonds or their equivalent.

But it is claimed that no such bonds as are binding upon the town have been issued in aid of this extension. That certain instruments purporting to be valid bonds of the plaintiff town have been issued in consideration of the agreement in suit, received by the defendants or the corporation represented by them, and still retained, is conceded. If, however, the objection is founded in fact, perhaps it must prevail. But we think it has no such foundation.

That the meeting of March 2, 1868, was a legal one, duly notified, is admitted in the defendants' argument, and so appears by the records. The act of 1867, c. 119, by virtue of which the vote for the loan of the town's credit was passed, is a public one, of which every person is presumed to have knowledge and of which all interested must take notice. It was therefore unnecessary to allude to it in the article in the warrant under which the vote in question was passed. Nor was it necessary under the act to call the meeting for that and no other purpose. True, it must be called for that purpose, as it was, by the insertion of the proper article in the warrant. It was no less for that purpose because other articles were put into the same warrant calling attention to other business to be done. A town meeting is called for the purpose indicated in each and every article in the warrant. Nor can the adjournment of the meeting by a majority vote be any objection to its legality. The adjourned meeting was merely a continuance of the original one and, while the meeting lasts, the voters have the same control of the business before them as they originally had. The two-thirds vote applied to all matters connected with, or which became a part of, the loaning of the town's credit. The adjournment neither added to or took from its liability in that respect.

But if any defects existed in that meeting, they were all cured by the subsequent action of the town at the meeting of December 19, 1868. This meeting appears to have been duly notified, and called for the sole purpose of considering the propriety and conditions of issuing these extension bonds. The former vote had been spread upon the records and was so referred to by the latter as to become a part of it, except so far as it was modified thereby. The

bonds were really issued under and by virtue of the latter, and it is necessary to refer to the former only for the purpose of ascertaining the terms and conditions of that under which the officers acted ; and for this purpose only is it a necessary part of the declaration in the plaintiff's writ.

The objection that the stock, received in exchange for the bonds, was not surrendered before the commencement of the action cannot prevail. By the terms of the agreement this surrender was not made a condition precedent. The defendants bound themselves to refund the bonds, then, "in which case, all certificates of railroad stock which may have been issued to said town in exchange for the bonds of the town, shall be delivered up to the said Smiths at their request." Thus the bonds have been duly issued, are binding upon the town, and have been received by the defendants or the corporation which they represent. The defendants having failed to comply with their part of the agreement in completing the extension of the road or refunding the bonds, it only remains for them to discharge their obligation by paying an equivalent with the "interest due and paid or unpaid."

But it is said that if any verdict can be sustained, this one cannot, because the damages are too large ; that there has been a partial performance of the contract by the defendants, and a corresponding acceptance by the plaintiffs, while the verdict is for a total failure.

If the defendants or the corporation had contracted to build a road in a certain specified manner, the title to which when finished was to be in the plaintiffs, and a question had arisen whether the work had been done in accordance with the contract, or as to a waiver of the time in which it was to have been done, the argument of the counsel would be entitled to great consideration. But such is not this contract. In its construction it is undoubtedly proper to take into consideration the proposal of the directors and the votes of the town as well as the written agreement. With the light thus obtained there is no difficulty in ascertaining its meaning. The purpose of the contract was solely to secure the extension of the road to Canton within a certain specified time. This must be accomplished or there must be a failure, and, if a failure,

it must necessarily be total and entire. If the extension was completed the contract would be fulfilled, otherwise it would not be; and in case of failure the only alternative was to refund, not a part of the bonds, but "each and every one" so issued. True, it was contemplated and agreed that bonds should be delivered from time to time as materials were furnished and the work progressed, yet the obligation to refund still remained in force. The fact, that they were to be refunded in case of final failure, conclusively shows that they were not to be in payment of work done or materials furnished, and that no inference of waiver or acceptance can be drawn from such delivery. There was in fact nothing to accept or waive except the time, and, this being a special provision of the contract, the municipal officers had no authority in regard to it and could have none without a vote of the town.

So in regard to the alleged settlement. The officers of the town could not have discharged the defendants from their agreement if they had desired to do so. We do not however understand from anything that appears in the case that such was the purpose or effect of the alleged settlement. Whether the agreement in suit were to be enforced or otherwise, it was certainly proper that the parties should ascertain what amount of bonds had been issued and the balance of interest paid by the town, as well as the amount of stock received. Nothing further than this appears to have been done or attempted.

The bonds issued before the last vote, if so issued, must rest upon the same ground as the others. The only objection to their validity is that they were issued before any obligation such as the vote contemplated was executed. But neither party can take advantage of such a defect. The subsequent vote authorized the full amount, and the defendants' obligation covered each and every bond issued for the road extension.

As to the value of the bonds the plaintiffs needed no evidence. Having been legally issued, the amount due on them would be their equivalent in money, certainly, until the contrary is shown. Sedgwick on the Meas. of Dam., 5th ed., 563.

The instruction of the presiding justice as to interest was clear-

ly correct and it does not appear that the jury were not governed by it.                                        *Exceptions overruled.*

APPLETON, C. J., WALTON, BARROWS, VIRGIN and PETERS, JJ., concurred.